# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY

| | | |
|---|---|---|
| JOHN MOFFIT | : | |
| 416 Longview Drive | : | |
| West Chester, PA 19380 | : | |
| | : | NO. |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| VALUEHEALTH, LLC | : | |
| 11221 Roe Avenue | : | |
| Leawood, Kansas 66211 | : | |
| | : | |
| Defendant, | : | JURY TRIAL DEMANDED |
| | : | |
| DON BISBEE | : | |
| 11221 Roe Avenue | : | |
| Leawood, Kansas 66211 | : | |
| | : | |
| Defendant, | : | |
| | : | |
| SCOTT PALECKI | : | |
| 11221 Roe Avenue | : | |
| Leawood, Kansas 66211 | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

1.   Plaintiff is John Moffit, an adult individual with residential address as alleged above.

2.   Defendant ValueHealth, LLC ("ValueHealth") is a Nevada LLC, with headquarters and principal place of business in and at the above address.

3.     Defendant Don Bisbee is the President and CEO of ValueHealth, and is an adult individual with office and residential address as alleged above.

4.     Defendant Scott Palecki is an attorney, the General Counsel for ValueHealth, and is an adult individual with residential and office address as alleged above.

## JURISDICTION AND VENUE

5.     Jurisdiction and venue are proper inasmuch as, inter alia:

a.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 as the action arises from the Age Discrimination in Employment Act ("ADEA").  Plaintiff's ADEA Notice of Right to Sue letter was issued June 20, 2023 and is attached as **Exhibit A** and this Complaint is filed within 90 days of receipt of that Notice.  Plaintiff cross-filed this matter under the Pennsylvania Human Relations Act, 43 Pa.C.S. §951, *et seq.*, with the Pennsylvania Human Relations Commission and it has not been one year since that cross-filing. Plaintiff seeks the Court to deem this action filed when one year has passed. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367 because they are so related to the federal claims that they form part of the same case.

b.     Venue is proper in the District of Kansas because Defendant is located in this District and the employer's contract between Plaintiff Moffit and Defendant ValueHealth, LLC has a forum selection clause that requires litigation to be in this District.

## BACKGROUND AND OPERATIVE FACTS

6.     At the time that Plaintiff John Moffit interviewed with, and was hired by, Defendant ValueHealth, he was over forty (40) years old, and, in fact, all Defendants knew that he was over sixty (60) years old.

7.     On or about January 18, 2022, Defendant ValueHealth provided, and Moffit accepted, a written offer of employment letter to Moffit, a copy of which is attached hereto as **Exhibit "B".**

2

8.     On January 20, 2022, Defendant ValueHealth's written Employment Agreement was signed by Moffit and returned by him to ValueHealth.

9.     Defendant ValueHealth advised Moffit that it would sign and return to him a copy of their written Employment Agreement, but that, as per its offer letter, he had to begin employment on January 31, 2022.

10.    On or about January 31, 2022, Plaintiff John Moffit began employment at and with Defendant ValueHealth and, pursuant to the written Employment Agreement, a copy of which is attached hereto and incorporated herein by reference at **Exhibit "C"**.

11.    The Employment Agreement provided, inter alia, that:

a.  Moffit would be paid a base annual salary of $250,000 (i.e., $20,800 per month) (¶3(a));

b.  Either party could terminate the Agreement on thirty (30) days' notice to the other (¶4(d)).

c.  If ValueHealth terminated Moffit's employment without "Cause", then he was owed twelve (12) months of salary as severance (¶5) and twelve (12) months of COBRA payments (¶7j)).

d.  Moffit was not obligated to seek other employment as any mitigation for the twelve (12) months of severance (¶6).

e.  "Cause" was defined a ¶4(b)(i) of the Agreement, as follows:

(i) willful destruction by Executive of Company property having a material value to the Company, (ii) fraud, embezzlement, theft, or comparable material dishonest activity committed by Executive against the Company, (iii) Executive's conviction of or entering a plea of guilty or nolo contendere to any crime constituting a felony under the local law where the act was committed (other than a crime involving the operation of a motor vehicle not involving a serious injury or death to an individual) or any crime involving fraud, dishonesty or moral turpitude, (iv) the Executive materially violates this Agreement and fails to cure such violation within thirty (30) days after receipt of written notice of the violation from the

3

Company, if such violation is capable of cure, (v) any pattern of conduct which holds the Company up to ridicule in the community or otherwise causes public disgrace to the Company, (vi) Executive fails to perform Executive's duties and responsibilities under this Agreement, or (vii) the misconduct or gross negligence of the Executive materially and demonstrably injurious to the Company (including, without limitation, any material breach by the Executive of Section 7 of this Agreement); provided (i) that no act or failure to act on the Executive's part will be considered misconduct or gross negligence if done, or omitted to be done, by him in good faith and (ii) that the Executive be given written notice of said willful misconduct or gross negligence and be given ten (10) days to cure said willful misconduct or gross negligence.

12.    While employed by and at Defendant ValueHealth:

a.  Moffit never received any written warning about anything;

b.  Moffit never received any verbal warning;

c.  Moffit was never advised — orally or in writing — that he had breached the Employment Agreement;

d.  Moffit was never advised that he had failed to perform [his] duties and responsibilities under the Agreement;

e.  Moffit never received any written Performance Improvement Plan ("PIP").

13.    Indeed, on or about September 1, 2022 - less than sixty (60) days before Defendants thereafter advised Moffit that he was being allegedly terminated for Cause _ Defendant ValueHealth and its President and CEO, Defendant Bisbee, assigned Moffit additional job duties, tasks, and sales territories.

14.    On information and belief, Defendants ValueHealth and its President, Defendant Bisbee, would not have assigned Moffit these new and additional job duties and tasks and sales territories if they, in fact, had truly believed that Moffit's job

4

performance was deficient, substandard, needed any improvement, or that he had breached the Employment Agreement.

15. Defendant ValueHealth did not promptly sign and return its written Employment Agreement to Moffit, despite repeated verbal and written requests by Moffit to ValueHealth, Bisbee, and/or Palecki over the months following Moffit's signing/returning of the signed Employment Agreement to ValueHealth.

16. On information and belief, Defendants began secretly planning to arrange a group layoff of a number of ValueHealth employees — including Plaintiff John Moffit — because of economic reasons.

17. However, Defendants realized that, if Mr. Moffit was terminated for economic reasons (i.e., a "non-Cause" reason), then Defendant ValueHealth would owe Moffit for at least thirteen (13) months of his base salary under his Employment Agreement (i.e., twelve (12) months of salary as severance, as well as for one month of required advance notice of termination) as well as twelve (12) months of COBRA payments.

18. As a result, Defendants thereafter embarked on a scheme and plan and conspiracy to later — but falsely - contend that Moffit was allegedly being terminated for "Cause", in order to wrongfully attempt to deprive Moffit of the thirteen (13) months of salary, and the twelve (12) months of COBRA reimbursements, that he was otherwise entitled to under the Employment Agreement if he was terminated without Cause, and to terminate Moffit before the other, remaining ValueHealth employees were scheduled for termination and layoff by Defendant ValueHealth.

19.    Finally, on October 26, 2022, Palecki, on behalf of ValueHealth, sent Moffit the long-requested and now countersigned and counter-dated Employment Agreement. A copy of Palecki's transmittal email to Moffit, and the now fully-signed Employment Agreement is attached hereto at **Exhibit "D".** Defendant Bisbee apparently only signed the Employment Agreement that very day. (See, p. 12.)

20.    In furtherance of their wrongful and bad faith scheme and plan, Defendants further agreed and planned amongst themselves:

a.    To not provide any written notice of termination for "Cause" to Moffit, so that there was no later written "paper trail" of their wrongful conduct and misrepresentations to Moffit;

b.    To try to force and coerce Moffit into promptly agreeing to and promptly signing a Severance and Release Agreement in only seven (7) days that would thereby enable the Defendants to get away with their wrongful plan, actions, bad faith, misrepresentations and breach of the written Employment Agreement to pay Moffit thirteen months of salary even if Defendants thereby intentionally violated federal statutes such as the Older Benefits Protection of Workers Act and the Age Discrimination in Employment Act— the better to promptly secure a signed written Severance and Release Agreement from Moffit and weeks before the evidence of the other, later, terminated employees was later learned by Moffit, that would prove the lie by Defendants.

21.    Just one day after belatedly signing and returning the Employment Agreement to Moffit, on the early evening of October 27, 2022, Defendant ValueHealth, via its President, Defendant Bisbee, and its company counsel, Defendant Palecki, called Plaintiff Moffit while he was working from his home in Pennsylvania, and then verbally advised him that he was being terminated, for "Cause", effective immediately.

22.    Moffit expressed surprise and immediately asked for the examples of his alleged conduct that supposedly constituted the grounds for his termination for "Cause",

6

but both Defendants failed and refused to identify any such conduct.

23.    On information and belief, both Defendants Bisbee and Palecki refused to provide to Moffit any alleged grounds for his termination for "Cause", because they knew that no such factual basis existed.

24.    Both Defendants then advised Moffit in that same call that — despite his (alleged) termination for "Cause", effective immediately — ValueHealth would nevertheless (and contradictorily) provide a written severance and release agreement to him, but he would only have seven (7) days — not the twenty-one (21) days required by the OWBPA and ADEA - to sign and return the severance and release agreement.

25.    On information and belief, Defendants ValueHealth, Bisbee, and Palecki, knew that:

   a.  Moffit was over sixty (60) years old;

   b.  Federal law (such as the OWBPA and the ADEA) required an employer such as ValueHealth to provide at least twenty-one (21) days — not seven (7) days — to an employee such as Moffit to consider and sign any proposed settlement and release agreement with the Employer;

   c.  They were violating federal law and, in particular, the ADEA and the OWBPA, by insisting upon Moffit's signature and agreement of the proffered severance and release agreement within seven (7) days, rather than twenty-one (21) days;

   d.  They nevertheless wanted the signed severance and release agreement from Moffit before they thereafter laid off the other targeted ValueHealth employees for the same economic reasons, and Moffit thereafter discovered these additional reasons for the false termination of Moffit for "Cause".

26.    Later that evening, on October 26, 2022, Defendant Palecki emailed the proposed ValueHealth severance and release agreement to Moffit and, Palecki again requested in writing that Moffit sign and return the severance and release agreement

7

within seven (7) days, rather than the twenty-one (21) days that he and the other Defendants knew was allowed and indeed required under federal law. A copy of Palecki's October 27, 2022 email to Moffit and the enclosed Defendant ValueHealth's proposed severance and release agreement is attached hereto as **Exhibit "E"**. Notably, Palecki belatedly advised that the alleged basis for Moffit's termination for "Cause" was now. ¶4(b)(i)(6).

27.    This belated rationale was false and unfounded and Palecki's and ValueHealth's conduct confirmed that he and it <u>knew</u> that this alleged "basis" was false and unfounded.

28.    Moffit did not immediately sign and return the requested ValueHealth severance and release agreement.

29.    One week later (i.e., on the seventh and last day that Palecki had previously advised Moffit was the deadline for signing and returning the severance and release agreement), on November 2, 2022, the Human Resources Department at Defendant ValueHealth called Moffit to, again, verbally inquire of Moffit whether he was going to sign and return the ValueHealth severance and release agreement by the seventh and final day.

30.    On information and belief, Defendant ValueHealth (and, in particular, its President, Bisbee, and its company counsel, Palecki) directed the Human Resources Department at ValueHealth to call — not email — Moffit on the seventh day, so that no written "paper trail" was created of their wrongful and illegal attempt to evade and avoid the twenty-one (21) day consideration period they knew was legally required by the ADEA and the OWBPA to be provided to Moffit.

8

31.     On or about November 2, 2022, Moffit verbally advised the Human Resources Department that he was not going to sign or return the proffered severance and release agreement.

32.     In addition, Defendants' own employee handbook normally required certain prerequisites, such as the issue of a written Performance Improvement Plan ("PIP") by the Employer, to an employee, before ValueHealth terminated any employee, such as Moffit, for alleged "Cause".

33.     Once again, all Defendants ignored any ValueHealth handbook obligation to issue a written PIP to Moffit because they were determined to avoid any scenario at ValueHealth where Moffit could then later contest any alleged "Cause" basis for his termination.

34.     Thereafter, on about November 15, 2022, Moffit directed that a written records preservation request be directed to Defendant ValueHealth (including to Defendant's inhouse counsel, Palecki), a copy of which is attached hereto at **Exhibit "F"**.

35.     Suddenly realizing that their prior unlawful scheme to violate the ADEA and the OWBPA, by insisting upon Moffit's signature on and return of the severance and release agreement within seven (7) days, had now come to light, and in an attempt to now neutralize and evade their prior intentional violation of federal law, Defendants, through Palecki, then advised Moffit that their original written seven (7) day period to Moffit to consider their settlement and release agreement would, now, be extended by them for another, additional, twenty-one (21) day period of time for him to consider and sign the proffered settlement and release agreement.

9

36.     On or about November 15, 2022, ValueHealth and the other Defendants implemented the rest of its preplanned, group layoff of a number of other ValueHealth employees, and specifically advised of the other remaining employees that they were being terminated for economic reasons — thereby proving the lie by Defendants to Moffit about his earlier, alleged, termination for "Cause".

37.     All Defendants were acting within the course and scope of the performance of their duties, or were otherwise authorized to make or engage in the foregoing actions, statements and representations.

38.     In fact, Moffit was not terminated by Defendant ValueHealth for "Cause".

39.     In fact, all Defendants knew that Moffit was not terminated for "Cause", but they advanced that contention to Moffit because of a desire to cheat Moffit out of and save Defendant ValueHealth the thirteen (13) months of salary and twelve (12) months of COBRA payments that were otherwise contractually-owed to Moffit under the Employment Agreement.

40.     All Defendants acted maliciously, wrongfully, intentionally, and outrageously, and in bad faith.

41.     On information and belief, neither President Bisbee, nor the company counsel, Palecki, ever first routed or discussed their proposed termination of Moffit, for alleged Cause, to ValueHealth's Human Resources Department, because they knew that there was no factual "Cause" basis and they did not want Human Resources then advising them that there was no factual basis, and no prior paper record, to support any alleged ValueHealth termination of Moffit for "Cause".

42.     Only <u>after</u> it became clear that Moffit would not immediately sign the proffered written settlement and release agreement, did ValueHealth's President, and/or its company counsel, then notify ValueHealth's Human Resources Department of their termination of Moffit but, on information and belief, instructed the Human Resources Department to contact Moffit on the seventh day — but only by telephone — in order to not leave any paper/email trail of their attempts to wrongfully get him to sign by the seventh day.

## COUNT I
## BREACH OF WRITTEN EMPLOYMENT CONTRACT
## <u>PLAINTIFF JOHN MOFFIT V. DEFENDANT VALUEHEALTH</u>

43.     The preceding paragraphs are incorporated hereby by reference.

44.     Defendant ValueHealth is in breach of its written Employment Agreement with Moffit, since it has failed to pay Moffit the contractually-required thirteen (13) months of salary, and the contractually-required twelve (12) months of COBRA payments, since Moffit was not terminated for "Cause".

45.     As a result of Defendant ValueHealth's breach of its written Employment Agreement, Plaintiff John Moffit has sustained damages, including, but not limited to, the thirteen (13) months of salary due to him under the written Employment Agreement, totaling about $260,000.00, and twelve (12) months of COBRA medical care premiums, totaling about $14,000.00.

46.     As outlined below, this breach constituted both a breach of a private obligation and an independent tort, which resulted in additional injury.

11

47.     Thus, an award of punitive damages is appropriate. <u>Guarantee Abstract &</u> <u>Title Co., Inc. v. Interstate Fire & Cas. Co., Inc.</u>, 232 Kan. 76, 78-79, 652 P.2d 665, 667 (1982).

WHEREFORE, Plaintiff Moffit requests judgment in his favor and against Defendant ValueHealth, for damages in excess of $75,000.00, as well as for punitive damages, plus costs, and interest.

**COUNT II**
**VIOLATIONS OF PENNSYLVANIA WAGE PAYMENT**
**AND COLLECTION ACT**
**<u>PLAINTIFF JOHN MOFFIT V. ALL DEFENDANTS</u>**

48.     The preceding paragraphs are incorporated hereby by reference.

49.     At all times relevant and material, Moffit was a Pennsylvania citizen and resident, and owed the protections of the Pennsylvania Wage Payment and Collection Act, 43 Pa. C.S.A. §260.1 <u>et. seq</u>. <u>See</u>, <u>e.g.</u>, <u>Killian v. McCullouch</u>, 873 F. Supp. 938 (E.D. PA 1995); <u>aff'd</u> 82 F.3d 406 (3d Cir. 1996).

50.     All individual Defendants played an active role in the corporate Defendant's failure and refusal to pay to Moffit the twelve (12) months of severance pay, and one months' pay for a required prior written notice, and the twelve (12) months of COBRA payments/coverage, owed under his agreement as a non-Cause termination.

51.     As a result of all Defendants' actions and statements, Plaintiff Moffit was wrongfully deprived of the thirteen (13) months of salary he was owed under the Employment Agreement, and the twelve (12) months of COBRA payments, and certain other accrued, but unused, benefits, pursuant to the Pennsylvania Wage Payment and Collection Act.

52.     All Defendants are therefore obligated to pay to Moffit the aforesaid sums. See, e.g., Mohney v. McClure, 390 Pa. Super. 682 (1990) aff'd 529 PA 430, 604 A.2d 1021 (1992).

53.     In addition, and under the Pennsylvania Wage Payment and Collection Act, Plaintiff Moffit is also entitled to 25% liquidated damages, plus reimbursement of his costs, interest, and counsel fees. See, e.g., Obeneder v. Link Computer Corp, 449 Pa. Super. 528, 674 A.2d 720 (1996); aff'd 548 Pa. 201, 696 A.2d 148 (1997).

WHEREFORE, Plaintiff John Moffit requests judgment in his favor and against all Defendants for damages in excess of $75,000.00, plus costs, interest, and reasonable counsel fees.

## COUNT III
## VIOLATIONS OF KANSAS WAGE PAYMENT ACT
## PLAINTIFF JOHN MOFFIT V. ALL DEFENDANTS

54.     The preceding paragraphs are incorporated hereby by reference.

55.     At all times relevant and material, Defendant ValueHealth is an "employer" pursuant to K.S.A. § 44-313(a), as it is a limited liability company which employed at least one person in Kansas, and Defendant ValueHealth is therefore, subject to the obligations of the Kansas Wage Payment Act, K.S.A. §§ 44-312, et. seq. (KWPA).

56.     Defendant Bisbee was at all relevant times an officer who had charge of the affairs of Defendant ValueHealth, and knowledge permitted violations of the KWPA as outlined herein, and therefore is deemed an "employer" pursuant to K.S.A. § 44-323(b).

57.     Defendant Palecki was at all relevant times an officer or other person who had charge of the affairs of Defendant ValueHealth, and knowledge permitted violations

13

of the KWPA as outlined herein, and therefore is deemed an "employer" pursuant to K.S.A. § 44-323(b).

Thus, all individual Defendants were an "Employer" under the KWPA and played an active role in the corporate Defendant's failure and refusal to pay to Moffit the contractually-required twelve (12) months of severance pay, and pay for one months' prior written notice, and twelve (12) months of COBRA payments, as a non-Cause termination.

58.     Under the KWPA, once an employee has met all conditions precedent to receiving payment, these become "wages" which were owed upon the next scheduled payday following discharge. Weir v. Anaconda Co., 773 F.2d 1073, 1084 (10th Cir. 1985).

59.     As a result of all Defendants actions and statements, Plaintiff Moffit was wrongfully deprived of the thirteen (13) months of salary and twelve (12) months of COBRA payments, he was otherwise owed under the Employment Agreement, pursuant to the KWPA.

60.     All Defendants are therefore obligated to pay to Moffit the aforesaid sums.

61.     Defendants have refused to pay Plaintiff these wages.

62.     Defendants' actions of refusing to pay Plaintiff were willful.

63.     Thus, a penalty pursuant to K.S.A. § 44-315(a) is appropriate, up to 100% of the unpaid wages.

64.     In addition, and under the Kansas Wage Payment and Collection Act, Plaintiff Moffit is also entitled to interest on the amount owed and reimbursement of his costs.

14

WHEREFORE, Plaintiff John Moffit requests judgment in his favor and against all Defendants for damages in the amount of his unpaid wages, for interest from the date upon which Plaintiff should have been paid, a penalty of the 100% of his unpaid wages, and his costs incurred in this action.

## COUNT IV
## FRAUD AND FRAUDULENT MISREPRESENTATION
## PLAINTIFF JOHN MOFFIT V. ALL DEFENDANTS

65.    The preceding paragraphs are incorporated hereby by reference.

66.    All Defendants engaged in fraud and fraudulent misrepresentation upon and towards the Plaintiff, inter alia making promises to Plaintiff which it had no intention of keeping and falsely claiming Plaintiff had breached the employment contract.

67.    All Defendants' actions and conduct towards and to the Plaintiff were unprivileged, willful, wanton, wrongful and outrageous.

68.    As a result of Defendants' actions and conduct towards the Plaintiff, Plaintiff has sustained various losses, injuries, costs, harm and damages.

69.    On information and belief, Plaintiff's damages are in excess of the sum of $75,000.00.

WHEREFORE, Plaintiff John Moffit requests judgment in his favor and against all Defendants for compensatory damages in excess of $75,000, punitive damages, and such other relief as this Court deems just and proper.

## COUNT V
## VIOLATION OF ADEA AND OWBPA
## PLAINTIFF V. DEFENDANT VALUEHEALTH

70.    The preceding paragraphs are incorporated hereby by reference.

15

71.     Plaintiff has filed (actually, cross-filed) a Charge of Unlawful

Discrimination with the EEOC and the PHRC, and has received a Right to Sue letter

from the EEOC.

72.     Defendant ValueHealth violated the ADEA, 29 U.S.C.A. §§621-634, and

the OWBPA by, inter alia:

a.  Requiring only seven (7) days consideration of the proffered severance and release agreement, and by failing and refusing to allow Moffit the twenty-one (21) days' consideration to consider the severance and release agreement;

b.  Providing an illusory and baseless consideration to Moffit in the severance and release agreement in return for a required release of ValueHealth (and its officers and attorneys), since Moffit was already entitled to twelve (12) months of severance pay, and twelve (12) months of COBRA payments, and one month's advance notice, for a non-cause termination.

73.     As a result of Defendant's intentional violation of the ADEA, and of the

OWBPA, Plaintiff has sustained losses, damages, costs, and injuries, and counsel fees.

WHEREFORE, Plaintiff requests judgment in his favor and against Defendant, for

compensatory damages in excess of $75,000.00, plus costs and counsel fees.

Respectfully submitted,

Date: September 13, 2023          BY:   ___s/Edward C. Sweeney, Esquire_____
                                        Edward C. Sweeney, Esquire
                                        Pro Hac Vice Pending
                                        Validation of signature code: ECS1942
                                        Attorney for Plaintiff
                                        WUSINICH, SWEENEY & RYAN, LLC
                                        102 Pickering Way, Suite 403
                                        Exton, PA 19341
                                        (610) 594-1600
                                        esweeney@wusinichsweeney.com

16

and

*/s/ Robert A. Bruce*
Daniel L. Doyle, KS Bar No. 11260
Robert A. Bruce, KS Bar No. 28332
DOYLE & BRUCE LLC
748 Ann Avenue
Kansas City, Kansas 66101
(913) 543-8558
(913) 543-3888 Facsimile
Dan@KCLaw.com
Robert@KCLaw.com
**ATTORNEYS FOR PLAINTIFF**

17