## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| | : | |
| JOHN MOFFIT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.  23-cv-2408-KHV-TJJ |
| | : | |
| VALUEHEALTH, LLC, et al. | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff John Moffit was employed by Defendants under a contract.  This is undisputed.

The contract had a two year non-compete and a twelve month salary continuation provision,

payable if Plaintiff was fired without Cause, as defined in Section 4(b) of the contract.  Plaintiff's

annual salary under the Agreement was $250,000 and he had the potential for an annual target

discretionary bonus of up to $200,000.  Defendants ran into economic difficulties and began

laying off staff in Fall 2022.  Defendants terminated Plaintiff's employment on October 27,

2022.  Defendant Bisbee testified that he decided to terminate Plaintiff's employment because

Plaintiff was "not meeting my expectations."  Bisbee did not realize at the time of the

termination that Plaintiff had a for cause contract.  Defendants now cite one provision of the for

cause section of the contract, Section 4(b)(vi), as supporting a for cause termination, but that

provision does not apply to these circumstances.  "Not meeting expectations" is not "Cause"

under the contract at issue.  As a matter of law, Plaintiff was fired without Cause and he is

entitled to payment of his twelve months salary continuation, and the additional remedies

provided by the Kansas and Pennsylvania wage statutes for unpaid wages.

## I.    UNDISPUTED MATERIAL FACTS

1.    Plaintiff served Requests for Admission on Defendants on December 1, 2023 and Defendants did not respond within thirty days, therefore the facts, application of law to facts or opinions about either in those Requests are admitted. Plaintiff John Moffitt's Request for Admission Directed to Defendant ValueHealth LLC ("ValueHealth RFA") (Exhibit A); Plaintiff John Moffitt's Request for Admission Directed to Defendant Don Bisbee ("Bisbee RFA") (Exhibit B). Fed. R. Civ. Pro. 36.

2.    Plaintiff and Defendant ValueHealth entered into an Agreement which is attached as Exhibit C-1. Moffit Declaration Par. 11 (Exhibit C).

3.    The Agreement was prepared by Defendant ValueHealth in house attorney Scott Palecki and transmitted to Plaintiff in Pennsylvania where he signed it. Palecki Dep. 12:2-22 (Exhibit B); Moffit Dec. Par. 15-16 (Exhibit C). Plaintiff was not represented by an attorney. Moffit Dec. Par. 17.

4.    ValueHealth did not affix its signature to the Agreement until just before it informed Plaintiff of his termination. Moffit Dec. Par. 28 (Exhibit C).

5.    Plaintiff resides in Pennsylvania and performed most of his work for Defendants in Pennsylvania.  Moffit Dec. Par. 2, 3, 8-10 (Exhibit C).

6.    The Employment Agreement in Section 2, Position and Duties, indicates as follows:

> a.    Section 2(a) requires that Plaintiff work full time, primarily from the Philadelphia, PA area, and be available for overnight travel.
>
> b.    Section 2(b) requires that, outside of vacation, illness, or approved outside activities, Plaintiff shall "devote his <u>full time and attention</u> during normal business

hours to the business and affairs of the Company and Executive shall <u>use</u> <u>reasonable efforts</u> to carry out all duties and responsibilities assigned to him faithfully and efficiently."

c.      Section 2(c) requires that Plaintiff "follow Company's policies, procedures, rules and regulations."

d.      Section 2(d) requires that Plaintiff promptly remit to the Company any amounts received from third parties.

7.      The Agreement outlines the obligations of Defendant ValueHealth in Paragraph 5:

Obligations of the Company Upon Termination.
*            *            *
Upon termination, except for the Accrued Rights, the Company shall have no additional obligations upon the termination of Executive's employment with Company with the Company; provided, however, that if this Agreement is terminated by the Company without Cause, or by Executive for Good Reason, Executive shall, in addition to the Accrued Rights, be entitled to receive equal or substantially equal continued payments of Base Salary for a number of months (the "Severance Period") equal to twelve (12) months, with such amounts to be paid in accordance with regular payroll practices, less applicable withholdings and taxes.

8.      "Cause" is defined by the Agreement in Paragraph 4(b) as seven enumerated transgressions.

9.      First, "Cause" is "(i) the willful destruction by Executive of Company property having a material value to the Company[.]"

10.     Plaintiff did not willfully destroy any property of Defendant ValueHealth. Moffit Dec. Par. 48(a) (Exhibit C); ValueHealth RFA No. 2-3; Bisbee RFA No. 2-3.

11.     Second, "Cause" is "(ii) fraud, embezzlement, theft, or comparable material dishonest activity committed by Executive against the Company[.]"

12.    Plaintiff did not commit fraud, embezzlement, theft, or any comparable material dishonest activity against Defendant ValueHealth. Moffit Dec. Par. 48(b) (Exhibit C); ValueHealth RFA No. 4-5; Bisbee RFA No. 4-5.

13.    Third, "Cause" is "(iii) Executive's conviction of or entering a plea of guilty or nolo contendere to any crime constituting a felony under the local law where the crime was committed (other than a crime involving the operation of a motor vehicle not involving a serious injury or death to an individual) or any crime involving fraud, dishonesty or moral turpitude."

14.    Plaintiff was not convicted of or plead guilty or nolo contendere to any crime. Moffit Dec. Par. 48(c) (Exhibit C); ValueHealth RFA No. 6-10; Bisbee RFA No. 6-10.

15.    Fourth, "Cause" is "(iv) the Executive materially violates this Agreement and fails to cure such violation within thirty (30) days after receipt of written notice of the violation from the Company, if such violation is capable of cure."

16.    Plaintiff was given not notice of any material violation of the Agreement and he did not commit any material violation of the Agreement. Moffit Dec. Par. 48(d) and (e). (Exhibit C); ValueHealth RFA No. 11-12; Bisbee RFA No. 11-12.

17.    Fifth, "Cause" is "(v) any pattern of conduct which holds the Company up to ridicule in the community or otherwise causes public disgrace to the Company."

18.    Plaintiff did not commit any pattern of conduct which holds the Company up to ridicule in the community or otherwise causes public disgrace to the Company. Moffit Dec. Par. 48(f). (Exhibit C). ValueHealth RFA No. 13; Bisbee RFA No. 13.

19.    Sixth, "Cause" is "(vi) Executive fails to perform Executive's duties and responsibilities under this Agreement."

20.    Plaintiff did not fail to perform his duties and responsibilities under this Agreement.  Moffit Dec. Par. 20. (Exhibit C); ValueHealth RFA No. 14-15; Bisbee RFA No. 14-15.

21.    Plaintiff worked for Defendant ValueHealth full time, more than forty hours per week, continuously up until the moment he was terminated by Defendant Bisbee.  Moffit Dec. Par. 19. (Exhibit C).

22.    Plaintiff made reasonable efforts to perform all duties assigned to him faithfully and efficiently. Moffit Dec. Par. 24. (Exhibit C).

23.    At no time did Moffit stop working or otherwise fail to perform his duties and responsibilities under the Agreement.  Moffit Dec. Par. 19. (Exhibit C).

24.    Seventh, "Cause" is "(vii) the misconduct or gross negligence of the Executive materially and demonstrably injurious to the Company (including, without limitation, any material breach by the Executive of Section 7 of this Agreement; provided (i) that no act or failure to act on the Executive's part will be considered misconduct or gross negligence if done, or omitted to be done, by him in good faith and (ii) that the Executive be given written notice of said willful misconduct or gross negligence and be given ten (10) days to cure such willful misconduct or gross negligence."

25.    Plaintiff did not commit misconduct or gross negligence.  Moffit Dec. Par. 48(g). (Exhibit C); ValueHealth RFA No. 16-17; Bisbee RFA No. 16-17.

26.    Section 6 of the Agreement provides that:

> 6. No Mitigation.  In no event shall the Executive be obligated to seek other employment or take any other action by way of mitigation of any amounts payable to the Executive under any of the provisions of this Agreement and such amounts shall not be reduced, regardless of whether Executive obtains other employment.

27.     ValueHealth in-house attorney Scott Palecki was present at the termination and overheard the reasons Defendant Bisbee gave for terminating Moffit. Palecki Deposition pp. 25:14-17; 26:25-27:17; 52:14-20; 55:5-10. (Exhibit D).

28.     Defendant Bisbee testified that he decided to terminate Plaintiff's employment because Plaintiff was "not meeting my expectations" and "the region wasn't growing."  Bisbee Deposition pp. 46:3-6 (Exhibit E).

29.     In its termination email Attorney Palecki on behalf of Defendant ValueHealth claimed that it fired Plaintiff for cause pursuant to Section 4(b)(vi) of the Agreement and offered Plaintiff one month's severance instead of the full twelve months he was owed.  Moffit Dec. Par. 27. (Exhibit C).

30.     Defendant Bisbee was the Chief Executive Officer of Defendant ValueHealth. Palecki Dep. 57:11-19. Bisbee was actively involved in the management of ValueHealth.  Moffit Dec. Par. 19. (Exhibit C).

## II.    BACKGROUND FACTS

The following facts are not necessary to the decision on this Motion, but are offered to provide context of the parties' interactions.  Regardless of whether Defendants claim there is a dispute about these facts, any dispute would be immaterial.

Defendant ValueHealth LLC ("ValueHealth") is in the business of developing ambulatory surgical centers.  Moffit Dec. Par. 4. (Exhibit C). ValueHealth is a small, privately owned company. Moffit Dec. Par. 4.  Plaintiff was hired in January 2022 as Regional President for the Pennsylvania region. (*Id.*) Prior to his hire, Plaintiff had been a successful executive at Cerner Corporation, now known as Oracle Cerner, a multinational provider of Health

Information Technology platforms, in a unit which was previously owned by Siemens. Moffit Dec. Par. 5. (Exhibit C). At Cerner Plaintiff was an Area Vice President with annual compensation of approximately $400,000. Moffit Dec. Par. 5. (Exhibit C). As part of the ValueHealth interview process, Plaintiff was told that he would be responsible for approximately $500 million in revenue, which turned out not to be the case. Moffit Dec. Par. 5. (Exhibit C). After he joined ValueHealth, Plaintiff discovered that he was assigned to sites that were severely underperforming in revenue because they were not handling enough surgical cases. Moffit Dec. Par. 6. (Exhibit C). Plaintiff also discovered that the pro forma financial projections ValueHealth had prepared for investors at these sites had seriously overstated expected revenue. Moffit Dec. Par. 6. (Exhibit C). Additionally, there were significant challenges in developing new sites under Defendant's model because the costs of office space skyrocketed coming out of Covid-19 because of supply chain issues. Moffit Dec. Par. 6. (Exhibit C). In June or July of 2022, ValueHealth split in two, with the parts of the company that had significant revenue being assigned to a unit called NueHealth, and the remaining, revenue-challenged units, being left with ValueHealth. Moffit Dec. Par. 6. (Exhibit C). Whitney Courser, Plaintiff's then superior, became head of NueHealth and Plaintiff was taken out of her chain of command. (*Id).*

Plaintiff's region was supposed to have five business development professionals, but it only had two, both of whom were laid off shortly after Plaintiff's termination. Moffit Dec. Par. 7. At the time of Plaintiff's termination, Defendant was conducting a Reduction in Force. Bisbee 61:9-14. (Exhibit E). The reason for this Reduction in Force was that the employer "had a budget that had an expectation of growth and revenue that was not where it was expected to be. And we needed to reduce our expenses according to where we were." Bisbee 82:7-18. (Exhibit E).

Plaintiff wanted a for cause employment agreement when he joined ValueHealth because he knew that, in contrast with the very large corporations he had been employed by in the past, ValueHealth was small and privately held and was a riskier business opportunity than working for his previous companies. Moffit Dec. Par. 12. (Exhibit C). Plaintiff would not have accepted the job if the Agreement stated that he could be fired for Cause if his work did not meet the CEO's expectations. Moffit Dec. Par. 13. (Exhibit C). Plaintiff would not have accepted the job if the Agreement had stated that he could be fired for Cause if the Company did not meet its revenue hopes.  (*Id.*).

## III.    LEGAL STANDARD

To be entitled to summary judgment, a moving party must show two things: "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007). To prove that "there is no genuine issue for trial," the moving party must show that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal quotations and citations omitted). A fact is "material" when it can "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A defense may be properly disposed on via summary judgment. *Chavez v. Singer*, 698 F.2d 420, 421 (10th Cir. 1983).

## IV.    ARGUMENT

### A.    *Plaintiff is entitled to summary judgment on his breach of contract claim.*

The facts are undisputed.  The parties have an enforceable contract in the Agreement.

The issue for the Court is the legal question of the meaning of the Agreement.  At the outset of

this action Plaintiff served Requests for Admission on the topic of whether Plaintiff committed

any act under the definition of Cause in the Agreement, and Defendants did not respond.  See

Exhibits A and B.  Those facts are therefore admitted for the purpose of this Motion.  F. R. Civ.

Pro. 36(a)(3). But even if Defendants had not admitted that there are no facts to support a

"Cause" termination, there is simply no evidence to support such a claim. Plaintiff contends that

as a matter of law nothing in the Agreement permits Defendants to invoke "Cause" merely

because Defendant Bisbee was not satisfied with the results of Plaintiff's work.  Cause is very

strictly defined and none of the definitions of Cause include the employer being dissatisfied with

the results of Plaintiff's work.

The Agreement has a specific provision that "[t]his Agreement shall be interpreted and

enforced exclusively pursuant to the laws of the state of Kansas without regard to conflicts of

law."  Employment Agreement, Section 10 subsection a.  Therefore the Court must look to

Kansas law for the interpretation of the Agreement.

The Kansas Supreme Court summarized the applicable precepts as follows:

> "[A] contract is 'ambiguous' only when the words used to express
> the meaning and intention of the parties are insufficient in that the
> contract may be understood to reach two or more possible
> meanings." *Holly Energy, Inc. v. Patrick,* 239 Kan. 528, 534, 722
> P.2d 1073 (1986). A contract must be construed within
> its four corners and all provisions considered together, not in
> isolation. When ambiguity appears, the language is interpreted
> against the party who prepared the instrument. 239 Kan. at 534,
> 722 P.2d 1073; *see also Rook v. James E. Russell Petroleum,*
> *Inc.,* 235 Kan. 6, Syl. ¶ 1, 679 P.2d 158 (1984) (ambiguities

> construed in favor of lessor because lessee usually provides lease
> form or dictates the terms).

*Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1206, 308 P.3d1238, 1247,

1248 (2013).

      Section 4(b)(vi)  of the Agreement, the provision relied upon by Defendants, defines

"Cause" to include "Executive fails to perform Executive's duties and responsibilities under this

Agreement."  Like in virtually all Executive Agreements, this provision does not require

*successful* performance of the Executive's duties and responsibilities.  It requires the Executive

to *perform* his duties and responsibilities.

      In order to determine what Plaintiff's "duties and responsibilities" were, the Court should

look to Section 2 of the Agreement "Position and Duties."  Section 2(a) requires that Plaintiff

work full time, primarily from the Philadelphia, PA area, and be available for overnight travel.

Section 2(b) requires that, outside of vacation, illness, or approved outside activities, Plaintiff

shall "devote his <u>full time and attention</u> during normal business hours to the business and affairs

of the Company and Executive shall <u>use reasonable efforts</u> to carry out all duties and

responsibilities assigned to him faithfully and efficiently."  Section 2(c) requires that Plaintiff

"follow Company's policies, procedures, rules and regulations."  Section 2(d) requires that

Plaintiff promptly remit to the Company any amounts received from third parties.  The

Agreement has a job description attached which sets forth the 'essential functions' of the

position.  But nowhere in the agreement does Plaintiff guarantee any particular result from his

efforts.

      Thus, reading the entire contract, Section 4(b)(vi) should be construed to make it a

"Cause" for termination if Plaintiff stops working full time, or refuses overnight travel, or

devotes his efforts to some other business or activities instead of ValueHealth.  If the Company

wishes to accuse him of lack of effort, by its own contract wording Plaintiff need only show that his efforts were "reasonable" not that they were successful.   None of those events occurred. Plaintiff worked full time and took not a single vacation day.  He put in reasonable efforts, and though the Company was free to fire him if it determined his efforts were not successful enough, it cannot re-write the definition of "Cause" to include lack of success where it simply does not.

It is also instructive, in interpreting Section 4(b)(vi), to compare it to the other definitions of "Cause" in the Agreement.  Such a comparison shows that the Agreement was designed to give Plaintiff notice and an opportunity to cure if the employer contended that his job performance was unsuccessful. In addition to the very general Section 4(b)(vi), there are two other provisions that specifically address performance, (iv) and (vii).  Both require notice and time to cure in circumstances of unsuccessful performance.  Under subsection (iv), if the Executive materially violates this Agreement, he Executive has a thirty (30) days opportunity to cure after receipt of written notice of the violation from the Company, if such violation is capable of cure.  Under subsection (vii), the Executive has to commit gross negligence or willful misconduct materially and demonstrably injurious to the Company to be fired for cause.  Even then, under this provision further provides that (i) that no act or failure to act on the Executive's part will be considered misconduct or gross negligence *if done, or omitted to be done, by him in good faith* and even then, under (ii), there is the requirement of written notice and right to cure (that the Executive be given written notice of said willful misconduct or gross negligence and be given ten (10) days to cure.)

Defendant's interpretation that it can declare, at any time without notice or opportunity to cure, that it is dissatisfied with Plaintiff's performance and therefore he has "failed to perform" under Section 4(b)(vi) would obviate the meanings of section (iv) and (vii) and the Executive's

right to receive written notice and right to cure.  Moreover, Kansas law follows the rule of

ejusdem generis, where courts interpret general provisions in light of more specific provisions in

a contract.  *Jones v. KP&H LLC*, 288 F. App'x 464, 470 (10th Cir. 2008).

In sum, Defendant ValueHealth cannot prove that Section 4(b)(vi) of the Agreement

provides "Cause" for Plaintiff's termination and therefore Plaintiff is entitled to summary

judgment on his breach of contract claim.

**B.      *Plaintiff is entitled to summary judgment on his statutory wage claims***

*1.      Kansas choice of law principles dictate that Pennsylvania Law applies.*

While the Agreement specifies that Kansas law applies to interpretation of the

Agreement, it is silent on choice of law for other types of claims, like tort or statutory claims.[1]

Therefore, this Court as a federal court sitting in Kansas in a diversity case must apply Kansas

choice of law principles in determining which state's law applies to Plaintiff's statutory claims.

Like nearly all states, both Kansas and Pennsylvania have enacted statutes to protect workers'

claims to compensation for their work, and to penalize employers who fail to pay wages

promptly, the Kansas Wage Payment Act ("KWPA") and the Pennsylvania Wage Payment and

Collection Law ("PWPCL").  Rights under the PWPCL cannot "be contravened or set aside by

private agreement." 43 Pa. Cons. Stat. § 260.7. Consequently, an employer and an employee may

not waive an employee's PWPCL rights. *Thureen v. Computer Sci.s Corp.*, No. 15-4292, 2016

---

[1] Defendant may argue that the Agreement's choice of law provision applies to other claims related to the Agreement.  But this is belied by the second sentence of Section 10(b), which is far broader than the first sentence's choice of law provision.  The first sentence only applies to the interpretation of "this Agreement".  The second sentence, which concerns choice of forum, covers "Any and all lawsuits or other legal proceedings related to this Agreement in any way whatsoever or the transactions described herein."  Plaintiff concedes that the broad choice of forum clause meant that he could not bring his Pennsylvania statutory claim in the courts in Pennsylvania.  But he still maintains the right to bring that Pennsylvania claim in this Court, which is not foreclosed by the very narrow first sentence that specifies Kansas law for interpretation of the Agreement only, not for application to other claims related to the Agreement.

WL 6613788, *4 (E.D.Pa. Nov. 9, 2016); *see also O'Donnell v. LRP Publ'ns*, 694 F. Supp. 2d

350, 358–59 (E.D. Pa. 2010). Except as determined in K.S.A § 44-324, a presumably rare

circumstance, rights under Kansas Wage Payment Act also cannot be "contravened, set aside or

waived." K.S.A. § 44-321.

     Plaintiff proposes to this Court that it need not decide whether Pennsylvania or Kansas

law applies, because there is no real conflict – he is entitled to relief under both states' statutes.[2]

However, Plaintiff expects Defendants to argue that while Pennsylvania law clearly provides that

contractual salary continuation after termination payments are earned wages, Kansas law is not

as clear on the topic. Therefore, in an abundance of caution, Plaintiff will brief the choice of law

question here.

     In a diversity case, the court applies the substantive law of the forum state, including its

conflict of laws rules. *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir.

2010) (citation omitted); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Kansas courts apply the Restatement (First) of Conflict of Laws to resolve conflict of laws issues.

*In re K.M.H.*, 285 Kan. 53, 56-57, 169 P.3d 1025, 1031-32 (2007). This Court typically treats a

statutory employment law claim as a tort claim for analysis of Kansas conflicts of laws principles.

*See Moccaldi*, 2024 WL 51347, at *5; *Wingerd v. Kabooworks Servs., LLC*, No. 18-cv-2024,

2019 WL 1171700, at *19 (D. Kan. Mar. 13, 2019); *Gazaway v. Ideal Clamp Prods., Inc.*, No. 20-

2515, 2021 WL 533832 , at *3 (D. Kan. Feb. 12, 2021).

---

[2] *See Moccaldi v. Pratt City Ford, LLC*, No. 22-1146, 2024 WL 51347, at *4 (D. Kan. Jan. 4, 2024) ("When conducting a conflict of laws analysis, the court, first, must determine whether a conflict exists. Where the outcome of a dispute would be the same under the laws of either state, the Court need not decide the conflict. The existence of a conflict can only be determined in the context of a specific law applied to a specific issue.") (alternations in original accepted) (internal quotations and citations omitted).

For tort claims, Kansas conflicts of laws principle of *lex loci delicti* says that you apply the law of the jurisdiction where the harm was felt. Obviously, the evidence shows in this case Moffit was harmed in Pennsylvania. The *Moccaldi* Court reasoned as follows:

> If a Kansas court characterizes a case as a tort case, then it follows the rule of *lex loci delicti*, which requires that "the law of the state where the tort occurred governs the merits of the litigation." *Anderson v. Com. Constr. Servs., Inc.*, 531 F.3d 1190, 1194 (10th Cir. 2008) (citing *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985)). The state where the tort occurred is "that place where the last event necessary to impose liability took place[,]" *Wingerd I*, 2019 WL 1171700, at *19, also described as "the state in which the wrong was felt[,]" *Delcavo*, 2021 WL 4453572, at *1. Kansas courts distinguish between the state "where the tortious act took place" and "the place where the injury was sustained" and consider the latter the place of the wrong. *Andy's Towing, Inc.* [*v. Bulldog Bldg. Sys., Inc.*, No. 10-2354], 2011 WL 2433679, at *5 [(D. Kan. June 14, 2011)]. For instance, in *Andy's Towing*, a plaintiff in Oregon contracted to buy a building from a defendant in Kansas but the defendant failed to deliver the building. *Id.* at *6. Judge Marten of our court concluded that plaintiff had sustained the injury in Oregon, not Kansas. *Id.* He explained, even if "defendants made fraudulent misrepresentations in Kansas[,]" "plaintiff did not get what it bargained for in Oregon," and so Oregon is the place of the wrong. *Id.*
>
> Here, Moccaldi sustained his alleged injuries in Florida. He allegedly failed to receive title in Florida in a timely manner. *See* Doc. 15 at 2 (Pretrial Order ¶ 2.a.v.) (stipulating that both parties "understood the vehicle was to be titled in Florida"); Doc. 17-1 at 2 (Def. Ex. A) (showing application for certificate of title belatedly made on March 4, 2022, to the Florida Department of Highway Safety and Motor Vehicles); *Id.* at 5 (Def. Ex. B) (showing issuance of certificate of title in Florida on March 4, 2022). Moccaldi also signed the contract in Florida, which is when he allegedly agreed to the extended warranty defendant allegedly forced upon him. Doc. 15 at 2 (Pretrial Order ¶ 2.a.iii.) (stipulating that Moccaldi "completed the purchase by telephone calls and execution of documents in Florida"). And, Moccaldi's desired arbitration would have occurred in Florida—according to the sales contract's terms—so he experienced the alleged injury stemming from its nonoccurrence in Florida as well. Doc. 19-2 at 4 (Pl. Ex.

B) (showing that the sales contract's arbitration provision required "the arbitration hearing shall be conducted in the federal district in which [the buyer] reside[s]" or in some cases "the federal district where [the] contract was executed"); *see also* Doc. 15 at 2 (Pretrial Order ¶ 2.a.i.) (stipulating that Moccaldi is "a resident of and domiciled in Florida"); *Id.* (Pretrial Order ¶ 2.a.iv.) (stipulating that the parties executed the contract in Florida). So, if the court characterizes this case as a tort case—because plaintiff pleads his claims under the KCPA—then the place of the wrong is Florida. And, under Kansas conflict of laws rules, Florida substantive law must govern.

*Moccaldi*, 2024 WL 51347, at *6.

In the event that the Court rules that Plaintiff's statutory claims should be treated as contract claims for the purpose of Kansas conflict of laws principles, Pennsylvania law applies because it is the place of contracting, *lex loci contractus.* The *lex loci contractus* doctrine requires that "the law of the state where the contract is made governs." *Meyer v. State Auto. Mut. Ins. Co.*, No. 23-2357, 2023 WL 6961981, at *4 (D. Kan. Oct. 20, 2023) (quoting *In re K.M.H.*, 169 P.3d at 1031–32). "A contract is made where the last act necessary for its formation occurs." *In re K.M.H.*, 169 P.3d at 1032. When a party signs a contract, "he accept[s] the contract and it bec[omes] 'made' for choice of law purposes." *Andy's Towing, Inc.*, 2011 WL 2433679, at *4. Plaintiff signed the Employment Agreement in Pennsylvania. Moffit Dec. Par. 15. Plaintiff performed under the contract for more than nine months in Pennsylvania. Defendant did not sign the Agreement until it decided to terminate Plaintiff's employment. Since Defendant prepared the Agreement, sent it to Plaintiff, and accepted his performance under the Agreement for more than nine months, the fact that Defendant's representative finally signed it on the eve of termination does not change the fact that the contract was made in Pennsylvania.

Thus under Kansas law, Pennsylvania law applies to Plaintiff's PWPCL claim.

       2.     *Plaintiff is entitled to summary judgment on his Pennsylvania Wage Payment and Collection Law Claim*

The Pennsylvania Wage Payment and Collection Law ("WPCL") provides that "[w]henever an employer separates an employee from the payroll ... the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable." 43 P.S. § 260.5. The PWPCL "provides a statutory remedy when [an] employer breaches a contractual obligation to pay earned wages." *DeAsencio v. Tyson Foods, Inc.,* 342 F.3d 301, 309 (3d Cir. 2003) (quoting *Antol v. Esposto*, 100 F.3d 1111, 1117 (3d Cir. 1996)). "[S]everance pay and other separation related contractual arrangements are ... covered by the WPCL." *Shaer v. Orthopaedic Surgeons of Cent. Pa., Ltd.,* 938 A.2d 457, 465 (Pa. Super. 2007) (*citing, inter alia, Bowers v. NETI Techs., Inc.,* 690 F. Supp. 349, 353 (E.D. Pa. 1988)). Under the PWPCL executives such as Defendant Bisbee are within the definition of "employer" and may be held individually liable for unpaid wages if they are actively involved in corporate decision making. 43. P.S. Sec. 260.2a ("'Employer' includes every person, firm, partnership, association, corporation, receiver or other officer of a Court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth"); *Mohney v. McClure*, 568 A.2d 682, 685-86 (Pa. Super. 1990), *aff'd* 604 A.2d 1021 (Pa. 1992) (scienter as to nonpayment of wages is not required for officer liability under the PWPCL, only active involvement in corporate decision making). The statutory liquidated damages for failure to pay earned wages is 25% plus attorneys' fees. 43. P.S. Sect. 260.10; *Aita v. NCB Mgmt. Servs., Inc.*, __ A.3d ___, 2024 Pa. Super. 223, 2024 WL 4295288, at *5 (Sept. 26, 2024). The award of attorneys' fees is mandatory because it promotes the statute's purpose to protect employees when employers breach a contractual obligation to pay wages. *Id.* at *5.

Accordingly, since Defendants have failed to pay Plaintiff the severance pay he earned under the Agreement, Plaintiff is entitled to summary judgment on his PWPCL claim in the amount of $250,000 in salary continuation, plus liquidated damages in the amount of 25% of his unpaid salary ($62,500) plus attorneys' fees.

   3. *Plaintiff is entitled to summary judgment on his Kansas statutory claim.*

    a. <u>Defendants are liable for violation of the KWPA</u>

In the event that the Court determines that Kansas law should apply to Plaintiff's statutory wage payment claim, Plaintiff is entitled to summary judgment on his KWPA claim. Note that Plaintiff is entitled to proceed under both statutes and choose his preferred remedy, because it is possible for the Wage laws of two states to apply presently. *See, e.g.*, *Sibley v. Sprint Nextel Corp.,* No. 08-2063, 2008 WL 2949564, at *5 (D. Kan. July 30, 2008) (allowing employees to recover from Kansas based employer under KWPA does not conflict with the employees' rights under their home states' wage payment statutes).

Kansas law requires that "[w]henever an employer discharges an employee ... the employer shall pay the employee's earned wages not later than the next regular payday upon which he or she would have been paid if still employed...." K.S.A. § 44–315(a) (1993), as quoted in *Eckholt v. American Business Information Inc.*, 873 F.Supp. 503, 508-09 (D. Kan. 1994). There can be no dispute that ValueHealth was an "employer" and Moffit an "employee" as those terms are defined in K.S.A. § 44–313. In addition, Bisbee is a liable under K.S.A. § 44-323(b) because he was the CEO and he decided not to pay Plaintiff his salary continuation. ("Any officer, manager, major shareholder or other person who has charge of the affairs of an employer, and who knowingly permits the employer to engage in violations of K.S.A. 44-314 or 44-315, and amendments thereto, may be deemed the employer for the purposes of this act.")

Under the KWPA, if an employer terminates an employee and willfully fails to pay the employee earned wages, the employer:

> [S]hall be liable to the employee for the wages due and also shall be liable to the employee for a penalty in the fixed amount of 1% of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure continues after the eighth day upon which payment is required or in an amount equal to 100% of the unpaid wages, whichever is less.

K.S.A. § 44-315(b).

The Kansas wage statute defines "wages" as:

> ... compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission *or other basis* ....

K.S.A. § 44-313(c) (emphasis added). The phrase "or other basis" has been clarified to mean:

> ... all agreed compensation for services for which the conditions required for entitlement, eligibility, accrual or earning have been met by the employee. Such compensation may include, but is not limited to, profit sharing, fringe benefits, or compensation due as a result of services performed under an employment contract that has a wage rate required or implied by state or federal law. Conditions subsequent to such entitlement, eligibility, accrual or earning resulting in a forfeiture or loss of such earned wage shall be ineffective and unenforceable.

K.A.R. 49–20–1(d); *see also Eckholt*, 873 F.Supp. at 509.  This Court held in *Eckholt* that "[i]n view of this broad definition and the statute's broadly protective purpose, the Court finds that notice and severance pay in this case clearly constitute 'wages,' since the four months' salary was 'agreed compensation for services' that Eckholt bargained for with ABCI." *Eckholt*, 873 F.Supp. at 509. The Kansas Court of Appeals agreed with this Court's interpretation of the statute in *A.O. Smith Corp. v. Kansas Dept. of Human Resources*, 36 Kan. App. 2d 530, 541, 144 P.3d 760, 768 (2005) (non-salary wages such as vacation pay are earned wages "when the conditions required for entitlement, eligibility, accrual or earning have been met by the employee" and thus are earned wages under the KWPA).

*Eckholt* is directly on point in this case.  Just as Eckholt's notice and severance pay were earned wages under the KWPA, so are Moffit's twelve months salary continuation, because it was bargained for compensation for services that Moffit had met all conditions required for entitlement and earning.

b.    <u>Defendants' violation of the KWPA was willful</u>

Under K.S.A. 44–315(b), "[a] penalty is assessed under the KWPA if "an employer willfully fails to pay an employee wages" as required by the wage statutes.  Id.  A willful act is one indicating a design, purpose, or intent on the part of a person to do wrong or to cause an injury to another.  *Holder v. Kansas Steel Built, Inc.*, 224 Kan. 406, 411, 582 P.2d 244 (1978).  Whether there is a genuine controversy or honest dispute about wage obligation is not controlling under current KWPA statutes. *Holder*, 224 Kan. at 410, 582 P.2d 244.  The Defendants' failure to pay Plaintiff was not an accident, it was intentional and willful. ValueHealth Attorney Palecki had drafted the Agreement and knew its contents.  Attorney Palecki attended the termination meeting and heard the reasons Bisbee gave for his decision. Palecki then wrote to Plaintiff and offered him one month of severance instead of the full twelve months of salary continuation he was entitled to under the Agreement.  The full and knowing conduct of Attorney Palecki as described above shows a willful design to wrong or cause injury to Mr. Moffit by depriving him of his salary continuation.  Palecki knew what the Agreement provided, and he knew what the real reason for Plaintiff's termination was.  Accordingly, the statutory penalty applies Plaintiff is entitled to judgment in the amount of double his twelve months of salary continuation.

### C.   Plaintiff is entitled to summary judgment on Defendant's failure to mitigate damages defense

In the Pretrial Order, Defendants stated that they intended to offer the affirmative defense that Plaintiff's claims are barred, in whole or in part, by his failure to exercise reasonable diligence to mitigate his alleged damages.  This defense was waived by the express terms of the Agreement.  Section 6 of the Agreement states:

> 6. No Mitigation.  In no event shall the Executive be obligated to seek other employment or take any other action by way of mitigation of any amounts payable to the Executive under any of the provisions of this Agreement and such amounts shall not be reduced, regardless of whether Executive obtains other employment.

This provision of the Agreement is clear, unambiguous, and expressly bars Defendants from claiming failure to mitigate damages as a defense.

## V.   CONCLUSION

Plaintiff John Moffit joined a small, privately held employer after a career as an executive with major corporations.  He obtained a for cause employment agreement to protect himself.  Contrary to what he was told in the interview process, he quickly learned that Defendant ValueHealth was foundering in terms of revenue.  By the Fall of 2022 ValueHealth was laying off employees to cut expenses.  ValueHealth terminated Plaintiff not for any Cause as defined in the Agreement, but because he was supposedly not meeting the CEO's expectations.  Defendants intentionally and willfully failed to pay Plaintiff the twelve months of salary continuation he was guaranteed in the Agreement and therefore Plaintiff is entitled to summary judgment on his claims for breach of contract, violation of the Pennsylvania Wage Payment and Collection Law, and violation of the Kansas Wage Payment Act. Plaintiff is also entitled to summary judgment

on Defendant's defense of failure to mitigate damages based on the express language of Section 6 of the Agreement.

Respectfully submitted,


Date: 10/7/2024                          By: /s/ Edward C. Sweeney
                                             Edward C. Sweeney, Esq. (PA ID: 64565)
                                             Wusinich, Sweeney & Ryan, LLC
                                             102 Pickering Way, Suite 403
                                             Exton, PA  19341
                                             (610) 594-1600
                                             esweeney@wspalaw.com
                                             *Admitted Pro Hac Vice*

                                             and

                                         By: /s/ Robert A. Bruce
                                             Robert A. Bruce, Esq. (KS ID: 28332)
                                             Daniel L. Doyle, Esq. (KS ID: 11260)
                                             Doyle & Bruce LLC
                                             748 Ann Avenue
                                             Kansas City, KS 66101
                                             (913) 543-8558
                                             Robert@KCLaw.com
                                             Dan@KCLaw.com

                                             **ATTORNEYS FOR PLAINTIFF**