IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN MOFFIT,                                )
                                            )
                    Plaintiff,              )        CIVIL ACTION
                                            )
v.                                          )        No. 23-2408-KHV
                                            )
VALUEHEALTH, LLC and DON BISBEE,            )
                                            )
                    Defendants.             )
_____)

## MEMORANDUM AND ORDER

On September 13, 2023, John Moffit filed suit against ValueHealth, LLC and Don Bisbee alleging (1) breach of contract against ValueHealth, (2) breach of the Kansas Wage Payment Act, K.S.A. § 44-312 et seq., against both defendants and (3) breach of the Pennsylvania Wage Payment and Collection Law, 43 Pa. C.S.A. § 260.1 et seq., against both defendants.[1]  This matter is before the Court on Defendant ValueHealth, LLC's Motion for Summary Judgment (Doc. #64), Defendant Don Bisbee's Motion For Summary Judgment (Doc. #67) and Plaintiff's Motion For Summary Judgment (Doc. #69), all filed October 7, 2024.  For reasons stated below, the Court sustains all motions in part.

## Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  A factual dispute is "material" only

---

[1]    Moffit also brought claims of fraud, fraudulent misrepresentation and age discrimination, which he voluntarily dismissed in the parties' Joint Stipulation Of Partial Dismissal With Prejudice (Doc. #95) filed December 11, 2024.

if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment. Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018). The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative. Liberty Lobby, 477 U.S. at 250–51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52.

When parties file cross-motions for summary judgment, they do not necessarily concede the absence of a genuine issue of material fact. Nafco Oil & Gas, Inc. v. Appleman, 380 F.2d 323, 324–25 (10th Cir. 1967). By filing a summary judgment motion, a party concedes that no issue of fact exists under the theory it is advancing, but it does not concede that no issues remain if the

Court adopts its opponent's theory.  Id. at 325.  Accordingly, the Court treats cross-motions for summary judgment separately; the denial of one does not require the grant of the other.  Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007).

## Factual Background

The following facts are undisputed or, where disputed, the positions of the parties are noted.[2]

ValueHealth operates out-patient surgery centers that serve as alternatives to traditional hospitals.  In January of 2022, ValueHealth hired John Moffit as Regional President for the Mid-Atlantic or Tri-State territory, which primarily covered Pennsylvania, New Jersey and Delaware.  Moffit resides in Pennsylvania and performed most of his work for ValueHealth there.  For the first part of Moffit's employment, his direct supervisor was the Chief Client Officer of ValueHealth, Whitney Courser, and for the second part of his employment, his direct supervisor was the Chief Executive Officer of ValueHealth, Don Bisbee.[3]

Moffit and ValueHealth entered into an employment agreement which Scott Palecki, ValueHealth's in-house attorney, prepared.  Moffit signed the agreement in Pennsylvania.  ValueHealth did not sign the agreement until just before it terminated Moffit's employment on October 27, 2023.  Under the agreement, ValueHealth agreed to pay Moffit wages—$250,000 per year—and bonus payments from January 31 through October of 2022.  The employment agreement included a choice of law, jurisdiction and venue clause, which stated that "[t]his

---

[2]    In his brief in support of his motion for summary judgment, plaintiff cites "background facts."  The Court does not consider these facts because plaintiff admits that they are not necessary to the decision, and they are not set forth in compliance with Local Rule 7.1.

[3]    Bisbee was CEO of ValueHealth from January of 2021 through November of 2023.

Agreement shall be interpreted and enforced exclusively pursuant to the laws of the State of Kansas without regard to conflicts of law" and that "[a]ny and all lawsuits or other legal proceedings related to this Agreement in any way whatsoever or the transactions described herein shall take place solely and exclusively within the State of Kansas and the federal and state courts therein." Employment Agreement (Doc. #1-3) filed September 13, 2023.

Under a section labeled "Obligations of the Company Upon Termination," the agreement states as follows:

> Upon termination, except for the Accrued Rights,[4] the Company shall have no additional obligations upon the termination of Executive's employment with the Company; provided, however, that if this Agreement is terminated by the Company without Cause . . . Executive shall, in addition to the Accrued Rights, be entitled to receive equal or substantially equal continued payments of Base Salary for . . . twelve (12) months, with such amounts to be paid in accordance with regular payroll practices, less applicable withholding and taxes.

Id. Under the provision labeled "Termination of Employment," ValueHealth had "Cause" to terminate Moffit's employment if he "fail[ed] to perform [his] duties and responsibilities under this Agreement."[5]  Id.  Moffit did not fail to perform his duties and responsibilities under the agreement.[6]

---

[4]    "Accrued Rights" include the Executive's earned but unpaid base salary through the date of termination; reimbursement for any unreimbursed business expenses Executive properly incurred prior to the date of termination; any earned and unused vacation; and employee benefits to which the Executive or his dependents may be entitled under the employee benefit plans or programs of the company.

[5]    The agreement lists six other circumstances which gave ValueHealth "Cause" to terminate Moffit's employment.  ValueHealth does not assert that it had cause under these six circumstances.

[6]    This fact is based on plaintiff's requests for admissions, to which defendants did not respond and are therefore deemed admitted.  Defendants filed a motion for leave to respond to plaintiff's requests for admission out of time, which the Court overruled.  Defendants then filed a
(continued. . .)

Moffit worked full time for ValueHealth until October 27, 2022, when Bisbee informed him that ValueHealth was terminating his employment for cause. Bisbee later testified that Moffit was not meeting his expectations and the region was not growing, and that he terminated Moffit's employment because he failed to fulfill his duties. Moffit claims that the real reason Bisbee terminated him was that ValueHealth was facing economic difficulties and began laying off staff in the Fall of 2022.

ValueHealth did not pay Moffit 12 months of continued salary after it terminated his employment. Palecki was present when Bisbee fired Moffit, and Palecki later emailed Moffit, stating that ValueHealth had terminated him for cause. Palecki offered to pay Moffit one month's severance pay, which he refused.

Though Moffit did not commit any actions which constituted "cause" for termination under the employment agreement, at least two people expressed that they were not pleased with his performance. Courser testified that Moffit was "not a leader" and was "weak and ineffective" in his role.[7] Courser Deposition (Doc. #68-1) at 5, filed October 7, 2024. Courser concluded that Moffit failed to engage in his job responsibilities and was "ineffective and non-existent." Id. at 11. Moffit contends that Courser did not communicate these conclusions until after this action

---

[6]    (. . .continued)
motion for reconsideration, which the Court also overruled. For reasons further explained below, because defendant is bound by judicial admissions, the Court does not include defendant's evidence that is inconsistent with the deemed admissions. Koch v. Koch Indus., Inc., 996 F. Supp. 1273, 1277 (D. Kan. 1998) (judicial admission conclusive unless court allows it to be withdrawn).

[7]    As explained above, the Court does not consider evidence that plaintiff did not perform his duties and responsibilities. To determine whether ValueHealth willfully violated the KWPA and whether Bisbee knowingly permitted ValueHealth to violate the KWPA, however, the Court considers defendants' perception of plaintiff's performance under the agreement.

was filed and maintains that no senior leaders said anything negative about him.

One of Moffit's duties was to build and maintain productive relationships with partner company leadership and Boards, payor and provider partners.  On October 26, 2022, the day before ValueHealth terminated plaintiff's employment, one such partner, Jim Brexler, the CEO of Doylestown Hospital, told Courser that Moffit added no value to discussions, that he had no confidence that Moffit would lead the partnership on a path toward solvency and that he wanted ValueHealth to remove Moffit from meetings involving the partnership.  Id. at 10.   Courser summarized Brexler's criticisms in an email to Palecki.

Though defendants have admitted that Moffit did not commit any actions which constituted "cause" for termination under the employment agreement, ValueHealth has presented evidence that it did not believe that Moffit was performing the duties and responsibilities laid out in Exhibit A of the employment agreement: (1) that Moffit did not build relationships with key affiliate company leadership; (2) that Moffit did not gather the regional associates together to communicate and connect to create alignment and struggled to communicate the organizational mission, vision and values; (3) that Moffit failed to adequately present material at two separate strategy events and his region was not meeting the company's expectations; (4) that Moffit did not adequately engage with the surgery center leadership to understand their growth goals and operational needs; (5) that Moffit did not create marketing, conference, seminar or other regional meeting materials and failed to provide the needed lift in the region; (6) that Moffit did not engage and build relationships with important payors in the region and was unable to work productively with Brexler, the CEO of Doylestown Hospital; (7) that Moffit failed to engage and move forward with two opportunities to expand a new cardiovascular service line in his region and did not engage to create a regional plan based on expanding the hyper specialty network; (8) that after ten months in the position, Moffit

could not articulate the network strategy nor provide the Muve Hyper specialty solution value; and (9) that Moffit did not take ownership over scheduling and conducting one-on-one meetings with Bisbee—his direct supervisor—in order to keep the leadership team properly informed.

On September 13, 2023, Moffit filed suit against ValueHealth and Bisbee, alleging that because ValueHealth did not have cause to fire him, ValueHealth breached the employment agreement by not continuing his base salary for 12 months.[8]  Moffit also asserts claims under the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-312 et seq., and the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 Pa. C.S.A. § 260.1 et seq., against both ValueHealth and Bisbee.

Moffit seeks summary judgment against ValueHealth on the issue whether it breached the employment agreement by failing to pay him 12 months' severance pay.  Moffit seeks summary judgment against ValueHealth and Bisbee under both the KWPA and the PWPCL.  Moffit also seeks summary judgment on defendants' failure to mitigate damages defense.[9]

ValueHealth seeks summary judgment that the PWPCL does not apply, and that it did not violate the KWPA.  Bisbee seeks summary judgment on the same issues, and also argues that as a matter of law, he cannot be held personally liable because he did not knowingly violate the KWPA.

---

[8]    Plaintiff originally included Palecki as a defendant, but the parties dismissed him in their Joint Stipulation For Dismissal With Prejudice (Doc. #55) filed August 14, 2024.

[9]    Defendants do not oppose plaintiff's motion on this issue.  The Court accordingly sustains plaintiff's motion for summary judgment on the issue of defendants' failure to mitigate damages defense.

**Analysis**

## I.    Plaintiff's Breach of Contract Claim

Moffit seeks summary judgment on his breach of contract claim against ValueHealth, claiming that as a matter of law, ValueHealth terminated his employment without cause and owes 12 months of continued base salary.  ValueHealth disagrees that Moffit is entitled to summary judgment, claiming that it terminated Moffit's employment for cause because he failed to perform his duties and responsibilities under the agreement.[10]

As explained above, because defendants failed to respond to plaintiff's requests for admissions, the Court does not consider defendant's evidence that is contrary to the admissions. Grynberg v. Bar S Servs., Inc., 527 F. App'x 736, 739 (10th Cir. 2013) (party's attempt to disavow earlier admissions with seemingly contrary evidence at summary judgment does not create disputed issue of fact).

Under Kansas law, the cardinal rule of contract interpretation is that the Court must ascertain and give effect to the parties' intent.  Hollenbeck v. Household Bank, 250 Kan. 747, 751, 829 P.2d 903, 906 (1992).  Where a contract is unambiguous, the Court must enforce it as written. Liggatt v. Emps. Mut. Cas. Co., 273 Kan. 915, 925, 46 P.3d 1120, 1128 (2002).

The parties do not contend that the employment agreement is ambiguous, and on this issue it is not.  ValueHealth has admitted that under the agreement, (1) if Moffit did not commit any of the grounds for termination listed in the employment agreement, it did not have cause to terminate his employment, and (2) if ValueHealth did not have cause to terminate his employment, it owes him 12 months of base salary.  Defendants have admitted that Moffit did not commit actions that

---

[10]    ValueHealth does not seek summary judgment on that issue.

constitute cause for termination under the employment agreement.  Accordingly, the Court grants Moffit's motion for summary judgment on his breach of contract claim.[11]

## II.    Plaintiff's Statutory Wage Claims

### A.    Choice Of Law

All three parties seek summary judgment on Moffit's claims under the KWPA and the PWPCL.  Moffit argues that he is entitled to recovery under both statutes,[12] but that the Court should apply the PWPCL because under Kansas choice of law rules, Pennsylvania law applies since the parties formed the contract there and he was injured there.[13]  Defendants argue that under the employment agreement's choice of law provision, Kansas law applies.

Moffit argues that the choice of law provision in the employment agreement applies only to the interpretation of the agreement—not to statutory claims such as his claims under the KWPA and the PWPCL.  In support, Moffit argues that the Kansas choice of law provision states that it applies only to the "interpretation" of the agreement and does not supplant traditional choice of

---

[11]    In addition to arguing that he did not fail to perform his duties and responsibilities, plaintiff's breach of contract theory also includes (1) that the employment agreement only required him to make reasonable efforts to carry out his duties and responsibilities faithfully and efficiently and (2) that he was entitled to notice and an opportunity to cure any performance issues under the agreement.  Because of defendant's admissions, the Court does not need to address these arguments.

[12]    Moffit argues that he can proceed under both statutes and choose his preferred remedy.  The Court does not address this argument because under the agreement's choice of law provision, Pennsylvania law does not apply and Moffit does not have a claim under the PWPCL.

[13]    Under the KWPA, an employee can recover wages due and, if the failure to pay was willful, a penalty of up to 100% of the wages due.  Kan. Stat. Ann. § 44-315.  Under the PWPCL, the employee can recover wages due, liquidated damages of 25% of the wages due and attorneys' fees.  43 Pa. Stat. Ann. § §260.9(a), 260.10.

law standards for statutory claims.[14]  This argument ignores the literal language of the agreement, which provides that Kansas law also governs enforcement of the agreement.

Under Kansas choice of law rules, the Court must enforce a valid contractual choice of law provision.  Gen. Elec. Capital Corp. v. Dodson Aviation, Inc., 286 F. Supp. 2d 1307, 1313 (D. Kan. 2003).  Kansas courts recognize the principle of freedom of contract and generally permit parties to choose the law applicable to their agreement.  Brenner v. Oppenheimer & Co., 273 Kan. 525, 538, 44 P.3d 364, 374 (2002).

In bringing suit under both the KWPA and the PWPCL, Moffit is seeking to enforce his right to payment under the employment agreement.[15]  The agreement states that it "shall be interpreted *and enforced* exclusively pursuant to the laws of the State of Kansas."  Employment Agreement (Doc. #1-3) (emphasis added).  Moffit claims that ValueHealth owes him severance pay under the employment agreement and seeks to enforce his right to payment under the KWPA and the PWPCL.  The contractual choice of law provision therefore applies.  See Harlow v. Sprint Nextel Corp., 574 F. Supp. 2d 1224, 1227 (D. Kan. 2008) (rejecting "impossibly narrow" argument that choice of law provision did not include KWPA claims because such holding would create "artificially and seemingly illogical distinction between earning commissions and actually receiving them").  Under the choice of law provision, Kansas law applies to Moffit's statutory

---

[14]    Kansas courts apply the Restatement (First) Conflict of Laws to resolve conflict of laws issues, and the doctrine of lex loci contractus, i.e. the law of the state where the contract is made governs.  In re K.M.H., 285 Kan. 53, 60, 169 P.3d 1025, 1031–32 (2007).  Since Moffit signed the agreement in Pennsylvania, the contract was formed in Pennsylvania.

[15]    Neither the KWPA nor the PWPCL create a substantive right to compensation; they merely provide mechanisms for employees to enforce payment of wages and compensation due under their contracts of employment.  See Toppy v. Passage Bio, Inc., 285 A.3d 672, PA Super (2022); see also Rukavitsyn v. Sokolov Dental Lab'ys, Inc., No. 12-02253-JAR, 2012 WL 3066578, at *2 (D. Kan. July 27, 2012).

wage claim.  Because Pennsylvania law does not apply, defendants are entitled to summary judgment on Moffit's PWPCL claim, and Moffit's motion for summary judgment on that claim is overruled.

      B.     <u>Plaintiff's KWPA Claim Against ValueHealth</u>

Moffit and ValueHealth filed cross-motions for summary judgment on whether Moffit can recover under the KWPA against ValueHealth.  Moffit seeks summary judgment that severance pay constitutes "wages" under the KWPA and that ValueHealth's violation of the KWPA was willful.  ValueHealth seeks summary judgment that severance pay does not constitute "wages" under the KWPA.  The KWPA requires that "[w]henever an employer discharges an employee . . . . the employer shall pay the employee's earned wages not later than the next regular payday upon which he or she would have been paid if still employed."  K.S.A. § 44–315(a).  If an employer willfully fails to pay an employee such wages, it is also liable for a penalty of one per cent of the unpaid wages for each day the failure continues or 100 per cent of the unpaid wages, whichever is less.  K.S.A. § 44–315(b).

      1.     <u>Whether Plaintiff's Severance Pay Constitutes "Wages" Under the KWPA</u>

As explained above, ValueHealth breached the employment agreement by terminating plaintiff's employment without cause and failing to pay him 12 months of continued base salary.  The parties dispute whether continued base salary—which defendants characterize as "severance pay"—qualifies as "wages" under the KWPA.  The KWPA defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions."  Kansas regulations define "or other basis" under K.S.A. § 44–313(c) to include the following:

      [A]ll agreed compensation for services for which the conditions required

> for entitlement, eligibility, accrual or earning have been met by the employee. Such compensation may include, but is not limited to, profit sharing, fringe benefits, or compensation due as a result of services performed under an employment contract that has a wage rate required or implied by state or federal law. Conditions subsequent to such entitlement, eligibility, accrual or earning resulting in a forfeiture or loss of such earned wage shall be ineffective and unenforceable.

K.A.R. 49–20–1(d). Under these broad definitions, Moffit's right to continued base pay falls within the definition of "wages." K.S.A. § 44–313(c); K.A.R. 49–20–1(d). Moffit's entitlement to such pay was a fringe benefit that was part of his agreed compensation for services rendered under the contract. Eckholt v. Am. Bus. Info., Inc., 873 F. Supp. 507, 509 (D. Kan. 1994) (severance pay "clearly" constitutes wages under KWPA when severance pay was "agreed compensation for service" that employee bargained for with employer).

ValueHealth cites Fotouhi v. Mobile RF Sols., Inc., No. 15-2587-JWL, 2015 WL 3397205 (D. Kan. May 26, 2015), and Firestone v. Hawker Beechcraft Int'l Serv. Co., No. 10-1404-JWL, 2012 WL 683286 (D. Kan. Mar. 2, 2012), for the proposition that as a matter of law, severance pay is not wages under the KWPA. These cases are distinguishable, however, from the circumstances here. In Firestone, plaintiff's right to severance pay was not tied to his continued employment or performance of services. Firestone, 2012 WL 683286 at *16. Because plaintiff in Firestone was not earning severance pay over the course of his employment, Judge Lungstrum found that it did not constitute "compensation for labor or services rendered" under the KWPA. Id. at *16–17. Likewise, in Fotouhi, plaintiff's entitlement to severance pay was not tied to his continued employment—if he remained employed beyond a five-year contract period, he was not entitled to severance pay upon termination. Fotouhi, 2015 WL 3397205 at *5.

Outcomes on this issue are highly dependent on the employment contract language at issue in the case. Here, Moffit was entitled to 12 months of base salary continuation as a fringe benefit

throughout the entire length of his employment, however long or short it might be, and his entitlement was dependent on him performing satisfactory services for ValueHealth. Moffit was only entitled to such pay if ValueHealth terminated his employment without cause; if Moffit failed to perform, ValueHealth would have had cause to terminate his employment, and he would not have been entitled to such pay.

It is also noteworthy that although the parties refer to "severance pay," the employment agreement characterizes the payments as "continued payments of Base Salary" which are "to be paid in accordance with regular payroll practices." Employment Agreement (Doc. #1-3). The express language of the employment agreement further supports the proposition that the payments constitute "wages" under the KWPA.

The Court therefore finds that in this case, the continuing base salary constitutes wages under the KWPA. See Eckholt, 873 F. Supp. at 509. For this reason, plaintiff has shown that as a matter of law, ValueHealth repeatedly violated the KWPA by failing to pay Moffit that base salary over 12 months in installments no later than the next regular pay day on which he would have been paid if still employed.[16] The Court therefore sustains plaintiff's motion for summary judgment on his KWPA claim against ValueHealth and overrules ValueHealth's motion on the claim.

2.    Whether ValueHealth's Violation Of The KWPA Was Willful

As mentioned above, if the employer's failure to pay the employee's wages was willful, then the employer is also liable for a penalty of 100% of the wages due. Kan. Stat. Ann. § 44-315. An act is willful if it indicates a design, purpose or intent to cause injury to the employee. A.O. Smith Corp. v. Kan. Dep't of Hum. Res., 36 Kan. App. 2d 530, 530, 144 P.3d 760, 762

---

[16]    The Agreement states that severance pay was due in twelve monthly installments.

(2005).  Whether an employer willfully failed to pay wages is a question of fact, and if an honest dispute arises over the amount of wages due, the Court will not impose a statutory penalty against the employer.  Coma Corp. v. Kan. Dep't of Lab., 283 Kan. 625, 646, 154 P.3d 1080, 1093 (2007).

Plaintiff argues that because ValueHealth's failure to pay severance was not an accident, it was intentional and willful.  In support, plaintiff alleges that Palecki drafted the agreement and knew of its contents, attended the termination meeting and heard Bisbee's reasons for his decision and offered plaintiff one month severance instead of 12 months of salary continuation.  ValueHealth has presented evidence, however, that there was an honest dispute regarding whether it owed plaintiff any severance pay at all.  ValueHealth has presented evidence that it believed it was terminating Moffit's employment for cause and therefore did not owe any severance.[17]

ValueHealth has shown a genuine issue of material fact whether its failure to pay Moffit 12 months of base salary continuation was willful.  The Court therefore overrules plaintiff's motion for summary judgment on this issue.

C.    Plaintiff's KWPA Claim Against Bisbee

Under the KWPA, "[a]ny officer, manager, major shareholder or other person who has charge of the affairs of an employer, and who knowingly permits the employer to engage in violations of K.S.A. 44-314 or 44-315, and amendments thereto, may be deemed the employer for purposes of this act."  K.S.A. § 44-323.  The parties do not dispute that Bisbee was an officer of ValueHealth.  The parties do dispute whether Bisbee knowingly permitted ValueHealth to violate the KWPA by failing to make installment payments of base salary to Moffit.  Whether an employer knowingly failed to pay wages due is generally determined by the trier of fact.  Holder v. Kan.

---

[17]    In his motion, Moffit, does not even argue that Bisbee had a design, purpose or intent to injure him—Moffit focuses solely on Palecki.

Steel Built, Inc., 224 Kan. 406, 411, 582 P.2d 244, 249 (1978).

Moffit seeks summary judgment on this issue, arguing that Bisbee knowingly permitted ValueHealth to violate the KWPA.  In support, he argues that Bisbee knew that ValueHealth did not have cause to terminate Moffit's employment because it knew that Moffit did not fail to perform his duties and responsibilities under the agreement yet stated that he was terminating Moffit's employment for cause.  Moffit has presented evidence that Bisbee terminated his employment for economic reasons, not the stated reasons.

Bisbee also seeks summary judgment on this issue, arguing that he did not knowingly permit ValueHealth to violate the KWPA and therefore cannot be held personally liable under the statute.  Bisbee has presented evidence that he reasonably believed that ValueHealth was terminating Moffit's employment for cause, because Moffit did not meet ValueHealth's expectations and Moffit's peers spoke negatively about his performance.

A reasonable jury could find either way on this issue.  The record reveals a genuine issue of material fact whether Bisbee knowingly permitted ValueHealth to violate the KWPA.  Accordingly, the Court overrules both motions for summary judgment on this issue.

**IT IS THEREFORE ORDERED** that Defendant ValueHealth, LLC's Motion For Summary Judgment (Doc. #64) and Defendant Don Bisbee's Motion For Summary Judgment (Doc. #67), both filed October 7, 2024 are **SUSTAINED** as to plaintiff's claims under the Pennsylvania Wage Payment and Collection Law, 43 Pa. C.S.A. § 260.1 et seq., and are otherwise **OVERRULED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion For Summary Judgment (Doc. #69) filed October 7, 2024 is **SUSTAINED** as to defendants' failure to mitigate damages defense and plaintiff's claim that ValueHealth breached the contract of employment and violated the Kansas

Wage Payment Act, K.S.A. § 44-312 <u>et seq</u>., and is otherwise **OVERRULED.**

Dated this 30th day of December, 2024 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge